

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

A. G. FILE NO.

Honorable E. L. Bauknight
Acting County Attorney
Travis County
Austin, Texas

Dear Sir:

Opinion No. O-4695
Re: Commissioners' Court of Travis
County has no authority to con-
struct cattle guards on public
roads, and related matter.

Your request for opinion has been received and care-
fully considered by this department. We quote from your re-
quest as follows:

"The Commissioners' Court of Travis County,
Texas, has, in the past, on first, second and
third class roads of this County erected and
maintained cattle guards where necessary. Re-
cently an application has been filed with the
Commissioners' Court to place cattle guards on
said roads and the application has received a
contest. In order to properly pass upon this
matter the Commissioners' Court has requested
that this matter be referred to your department
for an answer to the following questions:

"Question No. 1: Does the Commissioners' Court
of Travis County, Texas, have authority to
erect cattle guards upon first class, second
class, third class or any or all such roads in
Travis County?

"Question No. 2: What is the classification of
a road that has never been classified by the
County as either a first, second or third class
road, but is a road that is being maintained by
the County and used by the public by prescrip-
tion?

"Question No. 3: Does the user of a road ac-
quired by prescription give to that road the

Honorable E. L. Bauknight, Page 2

dignity of either a first, second or third
class road, or can a road be a first, second
or third class road by prescription?

"Question No. 4:  Is a cattle guard an ob-
struction;  a, on a first class road; b, on
a second class road; or, c, on a third class
road?

"Question No. 5:  Would an alteration of a
road make such change as to change the classi-
fication or dignity of a road?

"Enclosed herewith you will find a brief
on the statutes in the cases thus far covered.
However, I cannot find where this question of
cattle guards has been directly passed upon.
This matter is now pending before the Commis-
sioners' Court of Travis County, and before
acting upon the matter further the Commission-
ers' Court is awaiting your requested opinion."

Article 6704, Vernon's Annotated Texas Civil Stat-
utes, reads as follows:

"The Commissioners Court shall classify
all public roads in their counties as follows:

"1.  First class roads shall be clear of
all obstructions, and not less than forty (40)
feet nor more than one hundred (100) feet wide;
all stumps over six (6) inches in diameter
shall be cut down to six (6) inches of the
surface and rounded off, and all stumps six
(6) inches in diameter and under, but smooth
with the ground, and all causeways made at
least sixteen (16) feet wide, no first or second
class road shall be reduced to a lower class.

"2.  Second class roads shall conform to
the requirements of first class roads except
that they shall be not less than forty (40)
feet wide.

"3.  Third class roads shall not be less
than twenty (20) feet wide and the causeway not

less than twelve (12) feet wide; otherwise
they shall conform to the requirements of
first class roads.

"4. Any county in this State contain-
ing a population of not less than five thou-
sand, six hundred and ninety (5,690) nor more
than five thousand, seven hundred and fifty
(5,750), according to the last preceding Fed-
eral Census, may by a majority vote of the
Commissioners Court thereof authorize the con-
struction of cattle guards across any or all
of the first class, second class, or third
class roads in said county, and such cattle
guards shall not be classed or considered as
obstructions on said roads.

"The Commissioners Court of any county
coming under the provisions of this Act shall
within sixty (60) days after this Act takes
effect, provide proper plans and specifica-
tions of a standard cattle guard to be used
on the roads of said county, said plans and
specifications to be plainly written, supple-
mented by such drawings as may be necessary
and shall be available to the inspection of
the citizenship of such county. After said
Commissioners Court provides said proper plans
and specifications of a standard cattle guard
to be used on the roads of said county any
person constructing any cattle guard that is
not in accordance with said approved plans
and specifications prepared by said Commis-
sioners Court shall be deemed guilty of ob-
structing said roads of said county, and the
person responsible for such improper construc-
tion of said cattle guards shall be deemed
guilty of a misdemeanor, and shall be fined
not less than Five Dollars ($5) nor more than
One Hundred Dollars ($100).

"The Commissioners Court of any county
coming under the provisions of this Act is
hereby authorized and empowered to construct
cattle guards on the first class, second class,

and third class roads of said county and pay for same out of the Road and Bridge Funds of said county when in their judgment they believe the construction of such cattle guards to be to the best interest of the citizens of said county."

Article 6711, Vernon's Annotated Texas Civil Statutes, reads as follows:

"Any lines between different persons or owners of lands, any section line, or any practicable route, that the Commissioners' Court may agree upon, in order to avoid hills, mountains or streams through any and all inclosures, may be declared public highways upon the following conditions:

"1. Ten freeholders, or one or more persons living within an inclosure, who desires a nearer, better or more practicable road to their church, county seat, mill, timber, or water, may make sworn application to the Commissioners' Court for an order establishing such road, designating the lines sought to be opened and the names and residences of the persons or owners to be affected by such proposed road, and stating the facts which show a necessity for such road.

"2. Upon the filing of such application the clerk shall issue a notice reciting the substance thereof directed to the sheriff or any constable of the county, commanding him to summon such land owners, naming them, to appear at the next regular term of the commissioners' court and show cause why said lines should not be declared public highways. Said notice shall be served in the manner and for the length of time provided for the service of citations in civil actions in justice courts, and shall be returned in like manner as such citation.

"3. At a regular term of the court, after due service of such notice, if the commissioners' court deems said road of sufficient public

Honorable E. L. Bauknight, Page 5

importance, it may issue an order declaring
the lines designated in the application, or
the lines fixed by the commissioners' court,
to be public highways, and direct the same to
be opened by the owners thereof and left open
for a space of fifteen feet on each side of
said line, but the marked trees and other ob-
jects used to designate said lines, and the
corners of surveys, shall not be removed nor
defaced. Notice of such order shall be imme-
diately served upon such owners, and return
made thereon, as before provided.

"4. The damages to such land owners
shall be assessed by a jury of freeholders,
as for other public roads, and all costs at-
tending the proceedings in opening neighbor-
hood roads, if the application is granted
shall be paid by the county.

"5. The commissioners' court shall not
be required to keep any such road worked by
the road hands as in the case of other public
roads."

We quote from 21 Texas Jurisprudence, pages 534,
535, 536, 537, 539, 540 and 546, as follows:

"¶ 7. Statutory Terms - 'Public Roads' -
'Highway'. The statute relating to county
roads refers to all public roads and highways
not discontinued and established agreeably to
law. This has been construed to mean a road
established by the commissioners' court. The
expression 'public road' in other statutes is
generally construed to include nonstatutory
as well as statutory roads; . . .

". . . .

"¶ 9. County Roads - Classification. Under
statutory direction commissioners' courts classify
roads as of the first, second or third class.
The purpose of classification is in order that
a minimum width may be prescribed according to
class. The prescribed widths are: not less
than forty nor more than one hundred feet for
first and second class roads and not less than

twenty feet for third-class roads, with causeways sixteen feet in width for first and second class roads and twelve feet for third-class roads.

"§ 10. Neighborhood Roads. Neighborhood roads are distinguished from other roads in that they are established under special procedure. Formerly it was requisite that the inclosure through which a neighborhood road was established should contain not less than 1280 acres, and that the road should be laid out along a boundary or section line or in a direct line through an inclosure. These requirements have been abolished. The consequences of a road being a neighborhood road are that the county commissioners are not required to work it by the road hands, and that, where the right of way has been acquired without cost to the county the land owner across whose property the road runs may erect gates when necessary.

". . . .

"§ 14. Statutory and Nonstatutory Roads. Another classification of highways points to their origin as being statutory or nonstatutory. Prior to any statutory procedure for the establishment of highways, dedication and prescription were the modes of acquisition known to the common law. These modes have not been abolished by the statute that prescribes a procedure for the establishment of roads by county officials. . . .

". . . .

"§ 15. In General. As already noticed, a right of public travel over land may be acquired without any establishment of a highway by proceedings under the statute. Also, as noticed hereafter, official adoption or even recognition is not essential. One nonstatutory mode of acquisition is by dedication. Dedication may be by overt act of the owner signifying his intention, the dedication being accepted by public use. Also, without any overt act on the owner's part, the public may in

Honorable E. L. Bauknight, Page 7

fact travel over his land in such circumstances that intent to dedicate it to the public use for highway purposes may be inferred.

"Another mode of acquisition is by prescriptive right vesting by virtue of long-continued use. Thus public use may be evidence of the acceptance of a dedication, or of the owner's intent to dedicate and the public's acceptance, or of a prescriptive right of use.

". . . .

"¶ 20. Prescription. . . .

"Period of use. - Before adoption of the statute of limitations as prescribing the period of public use, twenty years was regarded as the minimum period. The longest statutory term (ten years) is now accepted as the minimum period. To make up the statutory time, the term of use under former owners may be tacked on to the time of use under the present owner."

Article 784, Vernon's Annotated Texas Penal Code, reads as follows:

"Whoever shall wilfully obstruct or injure or cause to be obstructed or injured in any manner whatsoever any public road or highway or any street or alley in any town or city, or any public bridge or causeway, within this State, shall be fined not exceeding two hundred dollars."

We quote from 21 Texas Jurisprudence, pages 723 and 724, as follows:

"¶ 209. What is an Obstruction - In General. Evidence having been given of an artificial, physical obstruction to travel, it is immaterial that the defendant's structure encroaches upon only part of the roadway and that the remaining part leaves ample space for travel. Any narrowing of the road to less than its legal width is an obstruction, and any obstruction that interferes with the road in the sense of making it less convenient for travel is an offense. However,

Honorable E. L. Bauknight, Page 8

the convenience of the public is not the sole test, for any permanent interference with the public right is an obstruction, although, regarded physically, the defendant has not in fact obstructed public travel. Thus a conviction was affirmed where the obstruction consisted of cutting the roadway, putting a culvert across it, and leaving the road in a condition not as good as before. Fencing along a stream from a bridge approach to the road boundary is likewise a legal obstruction. And of course an inclosure of part of the road by another does not justify the defendant's inclosure of the remaining part."

The case of Dozier v. City of Austin, 253 S. W. 554, held a curb which protruded into a street or alley was an obstruction. We quote from the court's opinion in this case as follows:

". . . 'Public highways belong from side to side and end to end to the public' and any permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance per se, and may be abated, notwithstanding space is left for the passage of the public. This is the only safe rule, for, if one person can permanently use a highway for his own private purposes, so may all, and if it were left to the jury to determine in every case how far such an obstruction might encroach upon the way without being a nuisance, there would be no certainty in the law and what was at first a matter of a small consequence would soon become a burden, not only to adjoining owners, but to all the taxpayers and the traveling public as well. Thus expediency forbids any other rule. But even if it did not, the rule is well founded in principle, for it is well settled, 'the public are entitled, not only to a free passage along any portion of it not in the actual use of some other traveler,' and if this be true it necessarily follows that there can be no 'rightful permanent use of the way for private purposes.' . . .

". . . .

Honorable E. L. Bauknight, Page 9

"No question of the reasonableness or un-
reasonableness of a permanent obstruction
can ever arise, but if it is a permanent ob-
struction it should be abated. Public rights
cannot be destroyed or impaired by the self-
ish desires of the individual who may seek
to advance his own ends, regardless of the
dictates of justice and equity. The costli-
ness of improvement forming encroachments
on a street can offer no defense to an action
to remove the obstruction, because such im-
provement was knowingly and willfully made
with no basis but the desire to extend the
possessory right of the citizen to public
property.

". . . ."

The case of Boon v. Clark, 214 S. W. 607, holds
that in view of Article 812, Penal Code of 1911 (now Article
784, Vernon's Annotated Texas Penal Code) prohibiting the
obstruction of public roads the Commissioners' Court would
not be authorized to lease any portion of the public roads
or highways for oil and gas wells which would necessarily
be obstructions thereof.

The case of El Paso Electric Company v. Leeper, 42
S. W. (2d) 863, holds that while the Commissioners' Court
is vested by law with a wide discretion in the matter of
opening and closing public roads it cannot give an electric
company or anyone else the right to obstruct a public road
by the erection and maintenance of a pole within the right-
of-way of a public road. We quote from the court's opinion
as follows:

"The undisputed evidence showed that
the pole in question was some distance from
the edge of the traveled or paved part of
the highway on either side, and some twenty
feet from the center of either of the roads,
but was within the right of way of each of
the highways. If we understand the conten-
tion of appellant, it is to the effect that be-
cause there was ample room on both sides
of the pole for the passage of vehicles, and
the location of the pole did not interfere with
or impede traffic, the answers of the jury to
its special issues, finding against appellant,
was contrary to and against the weight of the

Honorable E. L. Bauknight, Page 10

evidence; in other words, no negligence is shown as a matter of law. Article 784 of our Penal Code makes it a misdemeanor to willfully obstruct in any manner whatever any public road or highway.

"In 29 C. J., under the subject of what constitutes obstructions to highways, p. 616 et seq., it is said one is not justified in obstructing a highway because he leaves sufficient room for the passage of the public and refers to many cases in note, including Kelley v. State, 46 Tex. Cr. R. 23, 80 S. W. 362. It is there said that the same is true of any object placed close to the roadway constituting a present source of danger.

"It is said in Robinson v. State (Tex. Cr. App.) 44 S. W. 509, in a prosecution for obstructing a second class highway, that, 'although every particular part of the road may not have been traveled by the public, each and every part of the same was a part of the publicthoroughfare, and appellant had no right to infringe upon it, though the traveled part of the road may not have lain immediately over the portion encroached upon by appellant.' While the commissioners' court is vested by law with a wide discretion in the matter of opening and establishing public roads, it cannot transcend the powers granted. We think it may not in this instance give appellant the right to obstruct the road by the erection and maintenance of the pole within the right of way of the roads in question." (Underscoring ours)

Also see the following cases on road obstructions:

Shippers' Compress & Warehouse v. Davidson, 80 S. W. 1032

Haby v. Hicks, 61 S. W. (2d) 871

Jolly v. State, 19 Tex. Cr. 76

Santa Fe Townsite Co. v. Norvell, 207 S. W. 960

Honorable X. L. Bauknight, Page 11

Jenkins v. State, 60 S. W. (2d) 1040

Perry v. Jaggers, 9 S. W. (2d) 143

We quote from 25 American Jurisprudence, page 569, as follows:

"§ 276. Power to Authorize Obstruction or Encroachment. - Subject to constitutional limitations upon the invasion of property rights, the legislature may authorize obstructions in streets or other highways which would otherwise be nuisances, and may temporarily withdraw any highway from the general public use and devote it for the time being to a public use of a special character. As a rule, any obstruction or structure which is authorized by a statute enacted within the scope of legislative power cannot be a nuisance, but statutes authorizing such obstructions are strictly construed. . . ." (Underscoring ours)

The term "cattle guard" has been defined by the courts many times with relation to railroad crossings. Here is one such definition:

"'Cattle Guards,' as used in statutes requiring railroads to erect cattle guards at certain places along their lines, mean such an appliance as will prevent animals from going upon the right of way."

We assume from your letter that the cattle guards contemplated will effectively obstruct the passage of cows, horses and other livestock. If this be true such cattle guards would prevent travel over such cattle guards by horseback, horse and wagon and other horse-drawn traffic. It would also prevent the owner of cattle from driving same over the cattle guards. There can be no doubt but that horse-drawn traffic has the same right to use the public roads as automobiles or other motor-driven traffic would have. It is also true that such horse-drawn traffic would be entitled to occupy any portion of the public road not occupied at the same time by another user of the road. The fact that horse-drawn traffic might have a way to detour or go around the cattle guards would not prevent the cattle

Honorable E. L. Bauknight, Page 12

guards from being obstructions. In other words, all traffic, whether it be motor-driven or horse-drawn, would have the right to use all or any portion of the road or right of way not occupied at the same time by other vehicles or other traffic.

It is therefore our opinion that a cattle guard is a road obstruction.

Article 6712, Vernon's Annotated Texas Civil Statutes, reads as follows:

"The owners of land across which a third class or neighborhood road may be run, when the right of way therefor has been acquired without cost to the county, may erect gates across said road when necessary, said gates to be not less than ten feet wide and free of obstructions at the top."

It is our opinion that Article 6712, V. A. C. S., supra, does not authorize the erection of cattle guards by either the county or private individuals. This article only authorizes the erection of the kind of gates described in the statute on the class of roads designated in the statute by certain land owners as set out in the statute. This statute would be strictly construed. See 25 American Jurisprudence, p. 569, above quoted.

We call your attention to Section 4 of Article 6704, V. A. C. S., supra, which authorizes the Commissioners' Court of any county in the State containing a population of not less than 5,690 and not more than 5,750 inhabitants according to the last preceding Federal Census, to construct cattle guards across any or all first, second or third class roads in such county. The act also provides: "Such cattle guards shall not be classed or considered as obstructions on said roads." It would seem from this act that the Legislature evidently recognized that cattle guards were road obstructions and that the Commissioners' Court had no authority to erect cattle guards, hence the passage of the act for the county or counties coming within the population brackets set out in the act. Please let it be understood, however, that we express no opinion here as to the constitutionality of Section 4 of the act as it is not necessary for us here to pass on same.

Honorable E. L. Bauknight, Page 13

In answer to your first question it is our opinion that the Commissioners' Court of Travis County does not have authority to erect cattle guards upon any of the public roads of Travis County regardless of how said public roads are classified.

In answer to your fourth question it is our opinion that cattle guards are obstructions to all public roads of Travis County regardless of how said public roads are classified.

Have answered your first and fourth questions in the manner that we have, it becomes unnecessary to answer your second, third and fifth questions.

We wish to express our appreciation for the able briefs furnished us by you and the respective attorneys representing the landholders interested in the above matter.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Wm. J. Fanning
Assistant

WJF:GO

APPROVED JUL 11, 1942

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN